Submitted on record and briefs August 20, 1990, affirmed May 1, 1991

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL ROY HICKEY,
*Appellant.*

(C 88-10-36969; CA A61312)

810 P2d 859

Michael Roy Hickey, Salem, filed the brief *pro se* for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Vera Langer, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions on three counts of robbery in the first degree, ORS 164.415, and one count of being an ex-convict in possession of a firearm. ORS 166.270. He was found to be a dangerous offender, ORS 161.735, and was sentenced to 30 years imprisonment on each robbery count, to be served consecutively. He contends that the court erred by denying his motion to suppress, in giving an instruction and in the sentences imposed. We affirm.

The three robberies involved different victims and occurred within a short period of time but at different locations. There was a pretrial hearing on defendant's motion to suppress evidence seized from his wallet. Most of the evidence presented during the suppression hearing was also presented at the jury trial.

Larry Smith went to a bank at about 5 p.m. to use an automatic teller machine in the bank parking lot. Defendant confronted him with a gun and told him to withdraw $200. While defendant was distracted, Smith ran to his pickup. When defendant started to get into his car parked near the automatic teller machine, Smith rammed the car and smashed it into the wall of the bank. He then drove to a nearby grocery store and called the police. Defendant ran from the area.

Officer Walker received a somewhat confused police radio dispatch to go to the area of the bank or the grocery store to check on a disturbance or a possible robbery. He drove to the grocery store, but no one contacted him, so he went to the bank. When he arrived, he saw defendant's car smashed against the bank wall; the driver's door was open and the keys were in the ignition. He also saw a wallet lying on the console between the front seats. Several witnesses told him that they had heard a crash, had seen a pickup drive away from the collision and a man running from the area. The witnesses described the man as a white male, about 30 years old and wearing a striped shirt. One of the witnesses gave Walker a bank card in the name of Larry Smith that had been left in the teller machine.

Walker took the keys and the wallet from the car, opened the wallet and found defendant's driver's license with

his picture on it. He testified that, at that time, he did not know anything about a possible robbery and was trying to figure out what had occurred in the collision and if the person whose wallet was in the car was the same person who had run from the area or who had left the bank card in the machine.

After he had searched the wallet, Walker learned by police radio that there had been two other robberies close by, and involving a man who fitted the general description given to Walker.[1] He located and interviewed Smith about the details of the robbery involving Smith. The police used the identification from the wallet and prepared a photo array for identification purposes. Smith and the witnesses involved in the other two robberies identified defendant as the perpetrator.

The next day, a police officer saw defendant driving a pickup. When the officer pulled in behind the pickup, defendant accelerated and drove through a controlled intersection without stopping and almost collided with another vehicle. The officer turned on the overhead lights and pursued defendant. A few blocks later, defendant's pickup stalled, and he was arrested. There was a gun in the pickup.

Defendant moved to suppress evidence seized from his wallet, evidence derived from the identification taken from the wallet and evidence seized after his pickup was stopped. The trial court denied the motion. The only issue is whether seizing the wallet and opening it was lawful. Defendant contends that entry of the car without a warrant was unlawful, because there was not probable cause or a practical necessity sufficient to search it without a warrant. He argues:

> "Evidence which is the product of any prior illegal search or seizure must also be suppressed as 'fruit of the poisonous tree.' In this case, the state had no way of tying the defendant to the crimes except for the identification found in his illegally seized wallet. For this reason, the stop of the defendant on the following day, and any evidence found on or around him should be suppressed. Similarly, the photo throwdown identification of the defendant should be suppressed as a

---

[1] In one robbery, defendant pointed a gun at a man and woman and attempted to steal their car. He was unsuccessful but took the woman's purse and ran away. A few minutes later, and a short distance away, he took car keys from a man and woman at gun point and left in the car.

direct result of the picture identification illegally seized from his wallet."

■    We conclude that the seizure of defendant's wallet and the subsequent search of it were lawful. When Walker seized the wallet, he had information from witnesses that a pickup had hit the car and rammed it against the bank wall, that the pickup had driven away and that another person had left on foot. Additionally, he had been given a bank card that had been left in the teller machine. He had probable cause to believe that a hit and run collision had occurred and that either the perpetrator or a victim had fled the scene, leaving his car open and his wallet in it. Under those circumstances, there was a practical necessity to identify possible participants as soon as possible and to attempt to locate them. Walker testified that, in his experience, getting a search warrant would have taken from two to four hours and that by then the persons involved would have been completely out of the area and more difficult to locate.

Defendant cites *State v. Crook,* 93 Or App 509, 762 P2d 1062 (1988), and argues that there was a description of the person leaving the scene that was sufficient to locate him and that it was unnecessary to look for further identification. Additionally, he argues that the car could have been secured to await issuance of a search warrant. In *Crook,* the police had an extensive description of the person who had burglarized a business and had begun a search for him before locating and entering his car to seek identification. We concluded that there had been no practical necessity to get more information about the suspect in order to locate him, because the description the police had was sufficient. Additionally, we held that the officer who had located the defendant's car was not participating in the "manhunt" and could have remained with the vehicle while a warrant was obtained.

In this case, the description that Walker got of the man running from the area was very sketchy—a white male with brown hair, about 30 years old, wearing a striped shirt. Walker did not know whether that person was in fact involved in the incident, whether he was associated with the vehicle or whether he was the person who had left the bank card in the machine. He also did not know whether anyone might have been injured. It was necessary for the officer to act quickly to

find out what had occurred and who might have been involved. The court did not err by denying the motion to suppress.

Defendant's second assignment is that the court gave an "acquittal first" instruction, contrary to our holding in *State v. Martin,* 64 Or App 469, 668 P2d 479 (1983), and *State v. Ogden,* 35 Or App 91, 580 P2d 1049 (1978). The challenged instruction is different from that condemned in *Martin* and *Ogden* and does not suffer from the vice that we identified in those cases. The instruction was not wrong.

■ The third assignment is that the court erred by imposing consecutive sentences on all three robberies, which, he argues, arose out of the same criminal episode. Defendant contends that ORS 161.062(3), which provides that a single conviction is appropriate in instances of more than one theft, requires only one sentence; because robbery is, in essence, a theft with force or threatened use of force, that provision makes his episode only one crime. Theft or attempted theft is an element of robbery, and ORS 161.062(3) relates only to specifically designated crimes, not including robbery. The court was authorized to impose consecutive sentences under ORS 137.123.

■ In the fourth assignment, defendant contends that the court erred by sentencing him as a dangerous offender on each of the robbery convictions. He argues that only one enhanced penalty may be imposed on a series of charges in a single criminal episode. ORS 161.725 provides for an additional sentence for a felony if the defendant is determined to be a dangerous offender. There is no limitation on the number of times that the enhancement may be applied.

Defendant's final assignment of error requires no discussion.

Affirmed.